# 2003 DTA 121

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL I DE SAN JUAN, PANEL IV

WEALTH INTERNATIONAL NETWORK; ANDRE BRADY;
HECTOR CRUZ; DAVID CANO H/N/C BANCO ROYAL
Recurridos

v.

BASILIO PEREZ; JOSE PINTO; ISRAEL MENDEZ
Recurrentes

Núm. KLRA-2002-00261

San Juan, Puerto Rico, a 29 de julio de 2003

Panel integrado por su Presidente, el Juez Gierbolini,
y los Jueces Cordero y Rodríguez Muñiz

Rodríguez Muñiz, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

El 24 de abril de 2002, Basilio Pérez, Israel Méndez y José A. Pinto Rodríguez, presentaron recurso de revisión solicitando la revocación de la **Resolución y Orden** emitida por la Oficina del Comisionado de Instituciones Financieras (en adelante, el Comisionado), el 17 de mayo de 2001 y notificada el 28 de enero de 2002. Mediante dicha resolución, el Comisionado les impuso una serie de multas por violaciones a la Ley Uniforme de Valores, 10 L.P.R.A. §851, *et seq.*

Por los fundamentos que expresaremos a continuación, expedimos el recurso solicitado, confirmamos, en parte, y revocamos, en parte, la orden recurrida.

### I

El 28 de enero de 1997, el Comisionado emitió una Orden de Cese y Desista contra Wealth International Network, André Brady, Basilio Pérez, Héctor Cruz, José Pinto, Israel Méndez y David Cano h/n/c Banco Royal, por ofrecer en venta ciertos valores en contra de lo dispuesto por la Ley Uniforme de Valores. Wealth International Network (en adelante, WIN), es una corporación organizada bajo las leyes del estado de Delaware y

sus oficinas principales están localizadas en Miami, Florida. WIN es conocida como la Red Internacional de la Riqueza o la Universidad del Dinero. Durante el 1997, intentó incorporarse en Puerto Rico una subsidiaria de ésta, llamada Wealth International Network Puerto Rico, pero el Departamento de Estado le denegó la solicitud.

El concepto de WIN, según su presidente André Brady, consiste en enseñar los siete principios de la riqueza. Es una escuela cuyo propósito es educar a las personas en cuanto a dichos principios. El procedimiento utilizado para promover el concepto al público es mediante reuniones libres de costo, celebradas en lujosos hoteles, en las cuales orientan a las personas sobre los beneficios del programa ofrecido por WIN, anunciando el conocimiento que se adquiere con sólo asistir y del mucho dinero y éxito que pueden alcanzar gracias a las enseñanzas del programa. El propósito primordial de las reuniones es motivar a los asistentes a invertir. Uno de los métodos para aumentar los ingresos, según explican, es referir a otras personas al programa. Por cada persona reclutada tienen derecho a recibir $10.00 de comisión, además de recibir $10.00 por cada persona referida por el miembro reclutado y así, sucesivamente, hasta un máximo de siete niveles. También, se les informa a las personas que si forman parte de WIN, tendrán derecho a participar en otros multiniveles similares, tales como, *"Classic Car División"*, *"N' Touch, Inc."*, *"Unilevel"*, *"Círculo de la Vida"* y *"Banco Royal"*.

Otra alegada forma de generar ingresos es mediante el llamado *"Plan de Cinco Años"*, el cual consiste en invertir $100.00 mensuales, durante cinco años, en el Hudson Investor Fund y al transcurrir dicho término, tendrán $105,000.00. Otra alternativa es invertir $5,000.00 una sola vez y al cabo de cuarenta y ocho meses, tendrán $1,000,271.20. También le recomiendan al público invertir en acciones de High Tech. Claro está, todos estos valores sólo están disponibles para aquellas personas que formen parte de WIN.

Al final de cada reunión, se reparten folletos informativos sobre los demás beneficios disponibles exclusivamente para los integrantes del programa. Dicho folleto también incluye una solicitud de membresía. Una persona que quiera formar parte de WIN, sólo tiene que llenar la solicitud y pagar una cuota anual de $199.00. A cambio, recibe un manual de membresía y los formularios necesarios para reclutar a otras personas. Éste es básicamente el mayor beneficio de matricularse en WIN, ser reconocido como integrante del programa. Además, de tener acceso a los cursos, descuentos en hoteles, viajes, productos, intercambio de tarjetas de presentación y compartir con los demás integrantes de la organización.

André Brady es fundador, presidente y maestro de WIN. Basilio Pérez también es maestro de WIN y está certificado como *"presenter trainer"*. Pérez participa y ofrece su testimonio en las reuniones. Además, ayuda a repartir solicitudes de membresía, a inscribir nuevos miembros, a recibir el dinero de las matrículas y a vender participaciones y acciones de Hudson Investor Fund y High Tech. Héctor Cruz e Israel Méndez son integrantes de WIN y se dedican a reclutar nuevas personas en Puerto Rico y a vender valores. José Pinto es maestro de WIN en Puerto Rico y una de las dos personas certificadas como *"master presenter trainer"*. Pinto es el encargado del mercadeo de WIN en Puerto Rico y de recibir el dinero de los inversionistas. Además, firmó como incorporador los certificados de incorporación de WIN, Classic Cars Puerto Rico y WIN Mortgage Bank Puerto Rico, ambas corporaciones subsidiarias de WIN. Por último, David Cano ayuda a circular folletos informativos del programa multinivel Banco Royal y a vender valores en Puerto Rico.

Todas estas personas violaron la orden del Comisionado y continuaron celebrando reuniones de reclutamiento en las que actuaron como corredores, agentes o asesores de inversiones, ofreciendo a la venta valores tales como Hudson Investors Fund, High Tech, Inc., y Banco Royal.

El 12 de mayo de 1997, WIN, Brady, Pérez, Cruz, Pinto y Cano, presentaron un escrito de reconsideración a la orden de cese y desista en la oficina del Comisionado, mediante el cual las partes negaron dedicarse a actividades consultivas para la venta o compra de valores; recibir algún tipo de remuneración por aconsejar sobre el precio de los valores; haber ofrecido, vendido o comprado valores; haber hecho declaraciones falsas u omitido hechos materiales necesarios con el propósito de defraudar a las personas; y dedicarse a prácticas o negocios

fraudulentos o engañosos. Por el contrario, alegaron que sus actividades son de carácter estrictamente educativo; que se dedican a ofrecer seminarios de entrenamiento básico sobre planificación financiera; protección de bienes; desarrollo empresarial; entrenamiento de ventas, etc.

El 13 de junio de 1997, el Comisionado emitió una orden en la que señaló una conferencia sobre el estado de los procedimientos para el 11 de agosto de 1997, una conferencia con antelación a la vista para el 26 de agosto de 1997 y la vista administrativa en su fondo para el 9 de septiembre de 1997. Sin embargo, los primeros dos señalamientos fueron cancelados y la vista señalada para el 9 de septiembre se convirtió en una conferencia sobre el estado de los procedimientos. Luego de varias cancelaciones y múltiples incidentes procesales, la conferencia con antelación a la vista fue pospuesta para el 8 de diciembre de 1998 y la vista administrativa para el 11 de diciembre de 1998. Posteriormente, a petición del Sr. André Brady, la conferencia con antelación a la vista fue pospuesta para el 11 de diciembre de 1998. Ese día, a petición de Brady, se re-señalaron ambos procesos para el 14 de diciembre de 1998, fecha en la que sólo asistió el Sr. José A. Pinto.

Celebrada la vista administrativa, el oficial examinador rindió su informe el 19 de agosto de 1999.

El 17 de mayo de 2001, notificada el 28 de enero de 2002, el Comisionado emitió resolución en la que ordenó lo siguiente:

"*A. Se ordena a la parte coquerellada Wealth International Network satisfacer el pago de una multa de noventa y siete mil seiscientos dólares ($97,600), por las siguientes violaciones:*

*1. Por dos (2) violaciones al artículo 301 de la Ley Núm. 60, una multa administrativa de cinco mil dólares ($5,000) por cada violación.*

*2. Por la violación al artículo 201(a) de la Ley Núm. 60, una multa administrativa de cinco mil dólares ($5,000).*

*3. Por la violación al artículo 201(c) de la Ley Núm. 60, una multa administrativa de cinco mil dólares ($5,000).*

*4. Por tres (3) violaciones al artículo 101 de la Ley Núm. 60 y dos (2) violaciones a la Regla 17 del Reglamento de Valores, una multa administrativa de cinco mil dólares ($5,000) por cada violación.*

*5. Una multa administrativa de dos mil dólares ($2,000) por la violación al artículo 1 de la Ley Núm. 55 del 2 de mayo de 1933.*

*6. Una multa administrativa de cincuenta mil dólares ($50,000) por las reiteradas violaciones a la Orden de Cese y Desista por mas [sic] de un año.*

*7. Una multa administrativa de trescientos dólares ($300) por su incomparecencia a la Conferencia con Antelación a la Vista Administrativa en su Fondo.*

*8. Una multa administrativa de trescientos dólares ($300) por su incomparecencia a la Vista Administrativa en su Fondo.*

*B. Se ordena al coquerellado André Brady satisfacer una multa de ciento siete mil seiscientos dólares ($107,600.00) por las siguientes violaciones:*

*1. Una multa administrativa de cinco mil dólares ($5,000) por no haber obedecido la Orden del Oficial*

*Examinador del 6 de abril de 1998, ordenándole comparecer a la toma de su deposición.*

*2. Por tres (3) violaciones al artículo 301 de la Ley Núm. 60, una multa administrativa de cinco mil dólares ($5,000) por cada violación.*

*3. Una multa administrativa de cinco mil dólares ($5,000) por la violación al artículo 201(a) de la Ley Núm. 60.*

*4. Una multa administrativa de cinco mil dólares ($5,000) por la violación al artículo 201(c) de la Ley Núm. 60.*

*5. Por tres (3) violaciones al artículo 101 de la Ley Núm. 60, y dos violaciones a la Regla 17 del Reglamento de Valores, una multa administrativa de cinco mil dólares por cada violación.*

*6. Una multa administrativa de dos mil dólares ($2,000) por la violación al artículo 1 de la Ley Núm. 55 del 12 de mayo de 1933.*

*7. Una multa administrativa de cincuenta mil dólares ($50,000) por las reiteradas violaciones a la Orden de Cese y Desista por más de un año.*

*8. Una multa administrativa de trescientos dólares ($300) por su incomparecencia a la Conferencia con Antelación a la Vista Administrativa en su Fondo.*

*9. Una multa administrativa de trescientos dólares por su incomparecencia a la Vista Administrativa en su Fondo.*

*C. Se ordena al coquerellado Basilio Pérez satisfacer el pago de una multa de treinta y seis mil quinientos dólares ($36,500) por las siguientes violaciones:*

*1. Por dos (2) violaciones al artículo 301 de la Ley Núm. 60, una multa administrativa de dos mil dólares ($2,000) por cada violación.*

*2. Una multa administrativa de dos mil dólares ($2,000) por la violación al artículo 201(a) de la Ley Núm. 60.*

*3. Por tres (3) violaciones al artículo 101 de la Ley Núm. 60 y dos violaciones a la Regla 17 del Reglamento de Valores, una multa administrativa de dos mil dólares ($2,000) por cada violación.*

*4. Una multa administrativa de quinientos dólares ($500) por la violación al artículo 1 de la Ley Núm. 55 del 12 de mayo de 1933.*

*5. Una multa administrativa de veinte mil dólares (20,000) por las reiteradas violaciones a la Orden de Cese y Desista por más de un año.*

*D. Se ordena al coquerellado Héctor Cruz satisfacer el pago de una multa de treinta y ocho mil ochocientos dólares ($38,800) por las siguientes violaciones:*

*1. Por tres (3) violaciones al artículo 301 de la Ley Núm. 60, una multa administrativa de dos mil dólares (2,000) por cada violación.*

*2. Una multa administrativa de dos mil dólares ($2,000) por la violación al artículo 201(a) de la Ley Núm. 60.*

*3. Por tres (3) violaciones al artículo 101 de la Ley Núm. 60, y dos (2) violaciones a la Regla 17 del Reglamento de Valores, una multa administrativa de dos mil dólares ($2,000) por cada violación.*

*4. Una multa administrativa de quinientos dólares ($500) por la violación al artículo 1 de la Ley Núm. 55 del 12 de mayo de 1933.*

5. Una multa administrativa de veinte mil dólares ($20,000) por las reiteradas violaciones a la Orden de Cese y Desista por más de un año.

*6. Una multa administrativa de trescientos dólares ($300) por su incomparecencia a la Conferencia con Antelación a la Vista Administrativa en su Fondo.*

*E. Se Ordena al coquerellado José A. Pinto satisfacer el pago de una multa de cien mil ($100,000) por las siguientes violaciones:*

*1. Por tres (3) violaciones al artículo 301 de la Ley Núm. 60, una multa administrativa de cinco mil dólares ($5,000) por cada violación.*

*2. Una multa administrativa de cinco mil dólares ($5,000) por la violación al artículo 201(a) de la Ley Núm. 60.*

*3. Una multa administrativa de cinco mil dólares ($5,000) por la violación al artículo 201(c) de la Ley Núm. 60.*

*4. Por tres (3) violaciones al artículo 101 de la Ley Núm. 60, y dos (2) violaciones a la Regla 17 del Reglamento de Valores, una multa administrativa de cinco mil dólares ($5,000) por cada violación.*

*5. Una multa administrativa de cincuenta mil dólares ($50,000) por las reiteradas violaciones a la Orden de Cese y Desista por más de un año.*

*F. Se ordena al coquerellado Israel Méndez satisfacer el pago de una multa de treinta y cinco mil dólares ($35,000) por las siguientes violaciones:*

*1. Una multa administrativa de dos mil dólares ($2,000) por las violaciones al artículo 301 de la Ley Núm. 60.*

*2. Por la violación al artículo 201(a) de la Ley Núm. 60, una multa administrativa de dos mil dólares ($2,000).*

*3. Por tres (3) violaciones al artículo 101 de la Ley Núm. 60 y dos (2) violaciones a la Regla 17 del Reglamento de Valores, una multa administrativa de dos mil dólares ($2,000).*

*4. Una multa administrativa de quinientos dólares ($500) por la violación al artículo 1 de la Ley Núm. 55 del 12 de mayo de 1933.*

*5. Una multa administrativa de veinte mil dólares ($20,000) por las reiteradas violaciones a la Orden de Cese y Desista por más de un año.*

*6. Una multa administrativa de trescientos dólares ($300) por su incomparecencia a· la Conferencia con Antelación a la Vista Administrativa en su Fondo.*

*7. Una multa administrativa de trescientos dólares ($300) por su incomparecencia a la Vista Administrativa en su Fondo.*

*F. Se ordena al coquerellado David Cano satisfacer el pago de una multa de treinta y nueve mil con cien dólares ($39,100) por las siguientes violaciones:*

*1. Por tres (3) violaciones al artículo 301 de la Ley Núm. 60, una multa administrativa de dos mil dólares ($2,000) por cada violación.*

*2. Una multa administrativa de dos mil dólares ($2,000) por la violación al artículo 201(a) de la Ley Núm. 60.*

*3. Por tres (3) violaciones al artículo 101 de la Ley Núm. 60 y dos (2) violaciones a la Regla 17 del Reglamento de Valores, una multa administrativa de dos mil dólares ($2,000) por cada violación.*

*4. Una multa administrativa de quinientos dólares ($500) por la violación al artículo 1 de la Ley Núm. 55 del 12 de mayo de 1933.*

*5. Una multa administrativa de veinte mil dólares ($20,000) por las reiteradas violaciones a la Orden de Cese y Desista por más de un año.*

*6. Una multa administrativa de trescientos dólares ($300) por su incomparecencia a la Conferencia con Antelación a la Vista Administrativa en su Fondo.*

*7. Una multa administrativa de trescientos dólares ($300) por su incomparecencia a la Vista Administrativa en su Fondo.*

*Se ordena, además, a los querellados Wealth International Network, André Brady, Basilio Pérez, Héctor Cruz, José Pinto, Israel Méndez y David Cano, solidariamente, pagar una multa adicional equivalente al monto total del precio pagado por cualesquiera valores ofrecidos y/o vendidos. Además, se les ordena [sic] los antes mencionados, solidariamente, la devolución del monto total del precio de los valores ofrecidos y/o vendidos por los inversionistas a quienes ellos ofrecieron y/o vendieron dichos valores.*

*Las multas impuestas serán satisfechas mediante cheque certificado emitido a favor del Secretario de Hacienda, dentro del término de treinta (30) días contados a partir del archivo en autos de la Notificación de la presente Resolución. Dicha multa y las cantidades a reembolsar devengarán intereses a razón del 10.5% de interés anual, a tenor con lo dispuesto en la sección 320 de la Ley Número 170 del 12 de agosto de ·1988, según enmendada, conocida como 'Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico'."*

Inconformes con dicha determinación, el 25 de febrero de 2002, Pérez, Méndez · y Pinto solicitaron reconsideración ante la oficina del Comisionado. Sin embargo, transcurrido el término dispuesto por ley sin que ésta se expresara sobre la moción de reconsideración, Pérez, Méndez y Pinto (en adelante, los recurrentes), acudieron ante nos a través de un recurso de revisión judicial, mediante el cual le imputan al Comisionado la comisión de los siguientes errores:

*"Incidió el Comisionado de Instituciones Financieras al concluir que los recurrentes violaron las*

*disposiciones del artículo 201(a) y (c) de la Ley Uniforme de Valores aun cuando no existe prueba en el récord que establezca que los recurrentes no estaban inscritos como lo requiere la ley.*

*Cometió error el Comisionado de Instituciones Financieras al determinar que los recurrentes vulneraron las disposiciones del artículo 101 de la Ley Uniforme de Valores, ya que la prueba desfilada no estableció que mediara la intención de defraudar.*

*A los recurrentes se les privó del debido proceso de ley al sancionárseles por violaciones a la Regla 17 del Reglamento Uniforme de Valores y el artículo 1 de la Ley de Bancos, a pesar de que en la orden de cese y desista y/o querella no se les notificó violación a tales disposiciones.*

*Erró el Comisionado de Instituciones Financieras al concluir que los recurrentes incurrieron en las violaciones de ley contenidas en la resolución y orden y que violaron la orden de cese y desista cuando existe prueba en el récord que establece que los recurrentes Pérez y Pinto estaban bajo la impresión de que sus actuaciones eran correctas y no medió ningún tipo de prueba en cuanto a que el recurrente Méndez violó en alguna ocasión dicha orden.*

*El proceso administrativo debe ser anulado, ya que en el mismo se privó a los recurrentes del derecho al debido proceso de ley. Como consecuencia de la inadecuada citación, resultan improcedentes la anotación de rebeldía de Méndez y Pérez y las sanciones económicas impuestas por la incomparecencia a la conferencia con antelación a la vista y a la vista administrativa. De igual forma, las sanciones impuestas son contrarias a derecho.*

*Al recurrente José Pinto se le vulneraron sus garantías constitucionales, y en particular, su privilegio contra la autoincriminación, ya que fue presentado como testigo por el Interés Público y sin advertencia de clase alguna fue inducido a ofrecer un testimonio que le era adverso.*

*La orden requiriendo a los recurrentes a satisfacer de forma solidaria una multa adicional equivalente al monto total del precio pagado por cualesquiera valores ofrecidos y/o vendidos y a efectuar la devolución del monto total del precio de los valores ofrecidos y/o vendidos por los inversionistas a quienes ellos ofrecieron y/o vendieron dichos valores, adolece de ambigüedad.*

*Erró el Comisionado de Instituciones Financieras al imponer una multa de $300.00 al recurrente Méndez por su incomparecencia a la vista administrativa en su fondo, toda vez que no está facultado en ley para imponer tal sanción."*

## II

En los errores uno, dos y cuatro, los recurrentes alegan que el Comisionado erró al concluir que ellos violaron el artículo 101 y los incisos (a) y (c) del artículo 201 de la Ley Uniforme de Valores cuando no existe prueba en el expediente que así lo demuestre. Al contrario, según éstos, existe prueba que establece que Pérez y Pinto actuaron bajo la impresión de que sus acciones eran correctas. No les asiste la razón. Veamos.

La Ley Núm. 4 de 11 de octubre de 1985, mejor conocida como Ley de la Oficina del Comisionado de Instituciones Financieras, 7 L.P.R.A. §2001 *et seq.*, le confiere al Comisionado, entre otras prerrogativas, la responsabilidad primordial de fiscalizar y supervisar las instituciones financieras que operan en Puerto Rico. 7 L.P.R.A. §2003. También está facultado en ley para atender, investigar, resolver querellas e imponer multas administrativas por violaciones a las leyes que administra o a las reglas, reglamentos u órdenes emitidas o aprobadas por él. 7 L.P.R.A. §2010. Unas de estas leyes administradas por el Comisionado es la Ley Núm. 60 de 18 de junio de 1963, según enmendada, mejor conocida como Ley Uniforme de Valores, 10 L.P.R.A. §851 *et seq.* El Comisionado tiene la función de velar porque aquellos dedicados al tráfico de valores cumplan con la

ley y sus propósitos. 7 L.P.R.A. §2007.

El artículo 101 de la Ley Uniforme de Valores, 10 L.P.R.A. §851, dispone que es ilegal que cualquier persona relacionada directa o indirectamente con la oferta, venta o compra de cualquier valor, cometa los siguientes actos:

*"(1) emplee cualquier treta, ardid o artificio con el propósito de defraudar;*

*(2) haga cualquier manifestación falsa sobre un hecho material necesario para evitar que las declaraciones formuladas, a la luz de las circunstancias bajo las cuales se hicieron, conduzcan a error;*

*(3) se dedique a cualquier acto, práctica, o clase de negocio que opere u operaría como fraude o engaño sobre cualquier persona.*

*(4) emita, circule o publique cualquier material impreso o por medios electrónicos, que contenga representación falsa sobre un hecho material, u omita información sobre un hecho material necesario, de forma que la información que se emita, circule o publique, a la luz de las circunstancias en que fue emitida, circulada o publicada, conduzca a error; o*

*(5) emita, circule o publique cualquier material, realice cualquier representación escrita, a menos que el nombre de la persona que emita, circule, publique o haga la misma, y el hecho de que es esa persona quien emite, circula, publica o hace la representación, esté claramente indicado en esa misma comunicación."*

Por su parte, el inciso (a) del artículo 201 de la Ley Uniforme de Valores, 10 L.P.R.A. §861, establece que *"será ilegal que cualquier persona haga negocios como corredor-traficante o agente en Puerto Rico a menos que esté inscrito según las disposiciones de esta ley."* De igual forma, el inciso (c) señala que *"será ilegal que cualquier persona haga negocios como asesor de inversiones en Puerto Rico"*, a menos que:

*"(1) esté inscrito como tal de acuerdo con las disposiciones de este capítulo;*

*(2) esté inscrito como corredor-traficante sin estar sujeto a ninguna condición bajo el artículo 204(b) (5) de este título;*

*(3) no tenga un lugar de negocios en Puerto Rico...".*

Las normas de revisión de las determinaciones administrativas son bien conocidas. Es principio reiterado que las conclusiones e interpretaciones de los organismos administrativos merecen gran deferencia por parte de los tribunales. *García Oyola v. J.C.A.,* 142 D.P.R. 532, 540 (1997). Debemos ser cautelosos al intervenir con las determinaciones administrativas, debido a que las agencias poseen la experiencia y los conocimientos altamente especializados que se encuentran dentro del ámbito de sus facultades y responsabilidades. *Metropolitana S.E. v. A.R.P.E.,* 138 D.P.R. 200, 213 (1995); *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.,* 133 D.P.R. 521, 533 (1993). Por tanto, se establece una presunción de legalidad y corrección a favor de las agencias administrativas. *A.R.P.E. v. J.A.C.L.,* 124 D.P.R. 858, 864 (1989); *Murphy Bernabé v. Tribunal Superior,* 103 D.P.R. 692, 699 (1975).

No obstante, la deferencia judicial en la revisión de las determinaciones administrativas no conlleva la renuncia de los tribunales a su función revisora. Tan sólo implica que dicha función es de carácter limitado. Sólo se ejercerá en los casos apropiados. Tal intervención sólo estará justificada cuando la agencia obre de manera arbitraria, ilegal, en forma tan irrazonable que su actuación constituya un abuso de discreción, cuando la determinación no se sostenga mediante prueba sustancial, o cuando se haya cometido un error en la aplicación de la ley. *Fuertes v. A.R.P.E.,* 134 D.P.R. 947, 953 (1993); *Murphy Bernabé v. Tribunal Superior, supra,* a la

página 699.

Como norma básica, los tribunales tenemos la obligación de exigir que la conclusión administrativa se apoye explícitamente en la razón y en la ley. Además, de formar parte de un patrón integrado de reglamentación. *South P.R. Sugar Co. v. Junta*, 82 D.P.R. 847, 865 (1961). Debemos indagar sobre la razonabilidad de la decisión administrativa y no sustituir el criterio de dicho organismo a menos que se infrinjan valores constitucionales fundamentales. *Fac. C. Soc. Aplicadas, Inc. v. C.E.S.*, *supra*, a la página 533. Cuando obre en el expediente administrativo evidencia sustancial que haya sido considerada en su totalidad, los tribunales apelativos debemos confirmar las determinaciones de hechos realizadas por la agencia. *Metropolitana S.E. v. A.R.P.E.*, *supra*, a la página 213.

Nuestro Tribunal Supremo ha definido la evidencia sustancial como evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión, aunque exista prueba conflictiva de la cual puedan inferirse conclusiones distintas a las que la agencia adopta. *Hilton Hotels v. Junta Salario Mínimo*, 74 D.P.R. 670, 687 (1953).

De acuerdo con esta norma, la parte que impugna la determinación de la agencia tiene el peso de probar que dicha determinación fue arbitraria, irrazonable y que se tomó en ausencia de evidencia sustancial. Tiene la obligación de refutar la presunción de corrección sin descansar en meras alegaciones. *Com. Vec. Pro-Mej., Inc. v. J.P.*, 147 D.P.R. 750, 761 (1999); *Misión Ind. de P. R. v. J. P.*, 146 D.P.R. 64, 131 (1998). Debe demostrar que existe *"otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia, hasta el punto de que un tribunal no pueda, concienzudamente, concluir que la evidencia sea sustancial, en vista de la totalidad de la prueba presentada."* Demetrio Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da ed., Colombia, Forum, 2001, página 543; *Metropolitana S.E.*, *supra*, a la página 213, citando a *Hilton Hotels v. Junta Salario Mínimo*, *supra*, a la página 686. Si en la solicitud de revisión la parte afectada no demuestra la existencia de esa otra prueba, las determinaciones de hechos de la agencia deben ser sostenidas. *Domínguez v. Caguas Expressway Motors,* 148 D.P.R.___, 99 J.T.S. 85, a la página 1068, Opinión de 24 de mayo de 1999; *Ramírez v. Depto. de Salud*, 147 D.P.R. 901, 905 (1999). Hay que demostrar claramente que la decisión de la agencia no está justificada por una evaluación justa de la prueba. Tal obligación no ha sido descargada por los recurrentes en el caso que nos ocupa.

El 14 de diciembre de 1998, se celebró una vista administrativa en la que ambas partes tuvieron la oportunidad de presentar prueba documental y testifical. El oficial examinador recibió el testimonio de la Srta. Darlene Rodríguez Muñiz, Examinadora de Valores de la Oficina del Comisionado; del Sr. Carlos J. Matos Cartagena, Examinador de la División de Fiscalización de la Oficina del Comisionado; del Sr. Egberto Hernández Ortiz, testigo del interés público; del Sr. Reynaldo Vázquez Ortega, testigo del interés público; de la Sra. Ruth Delia Castillo, testigo del interés público; del Sr. Rafael Maldonado Vaillant, testigo del interés público; y del Sr. José Pinto, querellado. También fueron admitidos 41 exhibits, incluyendo las transcripciones de las deposiciones de los Sres. Tomás Rousseau, André Brady y Basilio Pérez.

Basado en la prueba presentada, el oficial examinador concluyó lo siguiente: (1) que el esquema multinivel utilizado por WIN y Banco Royal para reclutar personas es un contrato de inversión y, por tanto, un valor según el artículo 401 de la Ley Uniforme de Valores define dicho término, 10 L.P.R.A. §881 (l); [1] (2) que las acciones o participaciones de WIN, High Tech y Hudson Investor Fund, ofrecidas o vendidas en Puerto Rico, también se consideran valores; (3) que dichos valores no han sido inscritos según lo requiere el artículo 301 de la ley, 10 L.P.R.A. §871, y no están exentos de inscripción; (4) que los querellados promovieron, ofrecieron y vendieron en Puerto Rico acciones o participaciones en WIN, High Tech, Hudson Investor Fund y el esquema de membresía para la Red Internacional de la Riqueza; (5) que estas gestionen constituyen transacciones de valores cubierta bajo la Ley Uniforme de Valores y ninguno de los querellados está inscrito como corredor-traficante en Puerto Rico ni como agente de algún corredor-traficante o asesor de inversiones, según exige el

artículo 201 de la ley, 10 L.P.R.A. §861; (6) que los inversionistas aportaban su dinero y esfuerzo para atraer clientes a las reuniones de la organización esperando obtener una porción de las ganancias de la empresa; (7) que los querellados en sus conferencias orientaban a los asistentes sobre la conveniencia de invertir en los programas de inversión de WIN para producir mucho dinero en poco tiempo y con poco o ningún esfuerzo; (8) que el ambiente de abundancia y prosperidad que se percibía en las reuniones inducía a las personas a creer que ganarían mucho dinero mediante un mínimo de esfuerzo; (9) que el propósito de las reuniones no era únicamente educar al público sobre cómo invertir, sino motivarlos a invertir a través de la escuela; (10) que los querellados desarrollaron un esquema dirigido a defraudar en violación del artículo 101 de la ley, 10 L.P.R.A. §851, y de la Regla 17 del Reglamento de Valores; (11) que les hacían creer a las personas que invertían su dinero en acciones de High Tech y Hudson Investor Fund, cuando en realidad su intención era vender acciones en WIN; (12) que les ocultaban información sobre los riesgos que conllevaban las inversiones; y (13) que los querellados ofrecían un esquema multinivel para la compra de monedas que operaba bajo el nombre de Banco Royal, cuando no existe ninguna institución bancaria con ese nombre autorizada a hacer negocios en Puerto Rico, esto en abierta violación al artículo 1 de la Ley de Bancos, 7 L.P.R.A. §1. ▪

El Comisionado adoptó el informe y las recomendaciones del oficial examinador y concluyó que los recurrentes violaron los Artículos 101, 201 y 301 de la Ley Uniforme de Valores, *supra*, el artículo 1 de la Ley de Bancos, *supra*, y la Regla 17 del Reglamento de Valores.

Una vez examinado el expediente en su totalidad, podemos afirmar que las determinaciones de hechos del Comisionado están sostenidas por la prueba presentada ante tal entidad. No existe base alguna que nos permita concluir que la resolución del Comisionado no está justificada por una evaluación justa e imparcial de la totalidad de la prueba. No surge del expediente que dicha decisión fuese arbitraria, ilegal o irrazonable. Por tanto, debemos respetar la determinación de la agencia, la cual nos parece correcta.

Por último, debemos dejar claro que el planteamiento de los recurrentes, en cuanto a que actuaron pensando que sus acciones eran legales, es totalmente inmeritorio. En nuestro ordenamiento jurídico, la *"ignorancia de las leyes no excusa de su cumplimiento"*. Artículo 2 del Código Civil de Puerto Rico, 31 L.P.R.A. §2. Ellos debían saber que sus actuaciones eran ilegales y las consecuencias jurídicas de éstas.

### III
En los errores tres, cinco y ocho, los recurrentes le imputan al Comisionado el haberles violentado su derecho a un debido proceso de ley. Aducen que el Comisionado no cumplió con el término de quince días requerido para la citación de la vista administrativa y que les anotó la rebeldía e impuso sanciones económicas al no comparecer a la vista, cuando éste no está facultado en ley para ello. Además, alegan que en la querella no se les imputó haber infringido el artículo 1 de la Ley de Bancos, *supra*, y la Regla 17 del Reglamento de Valores; motivo por el cual no los pueden sancionar por dicha supuesta violación. Señalan que el procedimiento seguido por el Comisionado fue defectuoso por carecer de los requisitos de notificación adecuada del debido proceso de ley.

Tanto la Constitución de Puerto Rico como la Constitución de Estados Unidos, disponen que si una acción administrativa interviene con la vida, la libertad o la propiedad de una persona, es obligatorio proveerle al perjudicado el debido proceso de ley. Demetrio Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da ed., Colombia, Forum, 2001, páginas 314-316. El debido proceso de ley, en su aspecto procesal, le impone al Estado la obligación de garantizar que al interferir con dichos intereses, lo haga a través de un procedimiento justo, equitativo y que respete la dignidad de los individuos afectados. *Rodríguez Rodríguez v. E.L.A.*, 130 D.P.R. 567, 578 (1992); *López Vives v. Policía de P.R.*, 118 D.P.R. 219, 231 (1987).

Aunque en el ámbito del derecho administrativo el debido proceso de ley no tiene la rigidez que se le

reconoce en la esfera penal, sí hay que garantizarle a las partes aquellos derechos establecidos en la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. §2101 *et seq*. Esta ley se aprobó con el propósito de crear reglas y pautas que le brinden uniformidad a los procedimientos de las agencias del Gobierno de Puerto Rico. Dentro de este marco legal, se establecieron una serie de requisitos para garantizar el debido proceso de ley en dichos procedimientos.

La observancia del debido proceso de ley incluye el que se le conceda al querellado una oportunidad razonable para contestar y preparar su defensa. También, que se le permita presentar evidencia oral y documental, así como conocer la evidencia presentada en su contra y contrainterrogar a los testigos de la otra parte. La decisión debe estar basada exclusivamente en la evidencia presentada y se le exige a la agencia preparar un récord del procedimiento. Demetrio Fernández Quiñones, *supra*, a la página 366.

En específico, la sección 3.1 de la L.P.A.U., 3 L.P.R.A. §2151, dispone que en todo procedimiento adjudicativo formal ante una agencia se salvaguardarán los siguientes derechos:

"(A) *Derecho a notificación oportuna de los cargos, querellas o reclamos en contra de una parte.*

(B) Derecho a presentar evidencia.

*(C) Derecho a una adjudicación imparcial.*

*(D) Derecho a que la decisión sea basada en el expediente.*"

El requisito de notificación adecuada es medular al debido proceso de ley y constituye un requisito indispensable para la validez del procedimiento administrativo de carácter adjudicativo en sus distintas etapas. Su incumplimiento violenta el derecho a ser oído, al cual está indisolublemente ligado, ya que el mismo implica haber sido notificado. Demetrio Fernández Quiñones, *supra*, a la página 366.

La sección 3.4 de la L.P.A.U., 3 L.P.R.A. §2154, dispone que la querella que origina el procedimiento debe contener las disposiciones legales alegadamente infringidas por el querellado. Por su parte, la sección 3.9 de la ley, 3 L.P.R.A. §2159, establece que "*la agencia notificará por escrito a todas las partes o a sus representantes autorizados e interventores la fecha, hora y lugar en que se celebrará la vista adjudicativa. La notificación se deberá efectuar por correo o personalmente con no menos de quince (15) días de anticipación a la fecha de la vista, excepto que por causa debidamente justificada, consignada en la notificación, sea necesario acortar dicho período y deberá contener la siguiente información:*

(a) Fecha, hora y lugar en que se celebrará la vista, así como su naturaleza y propósito.

*(b) Advertencia de que las partes podrán comparecer asistidas de abogados, pero no estarán obligadas a estar así representadas, incluyendo los casos de corporaciones y sociedades.*

*(c) Cita de la disposición legal o reglamentaria que autoriza la celebración de la vista.*

*(d) Referencia a las disposiciones legales o reglamentarias presuntamente infringidas, si se imputa una infracción a las mismas, y a los hechos constitutivos de tal infracción.*

*(e) Apercibimiento de las medidas que la agencia podrá tomar si una parte no comparece a la vista.*

*(f) Advertencia de que la vista no podrá ser suspendida.*"

En el caso de autos, en la Orden de Cese y Desista emitida y notificada por el Comisionado el 28 de enero de 1997, se les informó a los querellados todas las alegaciones en su contra, se les ordenó producir una serie de documentos, se les indicó que podían solicitar una vista y se les apercibió de las consecuencias de no cumplir con dicha orden. Por tanto, los recurrentes advinieron en conocimiento del procedimiento en su contra.

En cuanto a los primeros señalamientos de vista, éstos fueron suspendidos en varias ocasiones a petición, tanto de los querellados, como de los querellantes. Finalmente, en la orden del Comisionado del 6 de noviembre de 1998, informando el calendario procesal, se le notificó directamente a los querellados que la conferencia con antelación al juicio sería el 8 de diciembre de 1998 y que la vista administrativa en su fondo sería el 11 de diciembre de 1998. Se les apercibió que en caso de alguna parte no comparecer a los señalamientos, ésta sería declarada en rebeldía y se continuarían los procedimientos sin su participación. El 11 de diciembre de 1998, luego de una conferencia telefónica celebrada en horas de la mañana con el señor Brady y el Lcdo. Homero González, representante legal del Comisionado, se acordó suspender la vista y re-señalarla para el 14 de diciembre de 1998. Ese mismo día se le notificó de la suspensión a las otras partes.

A la vista del 14 de diciembre, sólo asistió el señor Pinto. El Comisionado le anotó la rebeldía a los demás querellados y le impuso, a cada uno, una multa de $300.00, por no comparecer a la conferencia con antelación a la vista y una multa de $300.00, por no comparecer a la vista administrativa en su fondo.

En este caso hubo una incomparecencia injustificada y la sección 3.10 de la L.P.A.U., 3 L.P.R.A. §2160, dispone que si una parte debidamente citada no comparece a la conferencia con antelación a la vista, a la vista o a cualquier otra etapa durante el procedimiento adjudicativo, el funcionario que presida la misma tiene la facultad de declararla en rebeldía y continuar el procedimiento sin su participación.

El debido proceso de ley ofrece protección contra la arbitrariedad administrativa, pero no es molde rígido que prive la flexibilidad de los procedimientos administrativos. *Henríquez v. Consejo Educación Superior,* 120 D.P.R. 194, 202 (1987); *López Vives v. Policía de P.R., supra,* a la página 231. Todas las partes interesadas en este caso fueron notificadas de las alegaciones en su contra, de los señalamientos de vista, de las consecuencias de incumplir con las órdenes y señalamientos de la agencia, de la decisión emitida y de su derecho a revisión. En tales circunstancias, resulta evidente que a los recurrentes se les brindaron todas las garantías del debido proceso de ley.

En consecuencia, concluimos que el error señalado a los efectos de que se les violó el debido proceso de ley durante el trámite procesal, carece de méritos.

Sin embargo, la sección 3.21 de la L.P.A.U., 3 L.P.R.A. 2170(a), establece que antes de imponerle una sanción económica a un promovido por dejar de cumplir una orden del juez administrativo o del oficial examinador, habrá de ordenarle que muestre causa. De no cumplirse con esa orden, o de determinarse que no hubo causa que justificare el incumplimiento, se le podrá imponer una sanción económica que no excederá de doscientos dólares ($200.00).

En el caso ante nos, no se cumplió con el procedimiento de mostración de causa antes de imponerle la sanción a Israel Méndez. Además, la cuantía impuesta excedió lo permitido, pues se impusieron trescientos dólares ($300.00). Por tal razón, procede revocar esa partida. Aclaramos que a los otros recurrentes no se les impuso el pago de esta sanción.

### IV

En el sexto error, Pinto alega que se le violó el privilegio contra la autoincriminación.

En nuestra jurisdicción, las disposiciones que sirven como fuente legal al derecho a la no autoincriminación

son la Enmienda Quinta de la Constitución de los Estados Unidos, la Sección 11 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico y la Regla 24 de Evidencia, 32 L.P.R.A. Ap. IV.

La Enmienda Quinta de la Constitución de Estados Unidos dispone que *"no person shall be compelled in any criminal case to be a witness against himself"*. La Sección 11 del Artículo II de la Constitución de Puerto Rico traduce al español la quinta enmienda al establecer que nadie será obligado a incriminarse mediante su propio testimonio. Mientras que la Regla 24 de Evidencia, *supra*, señala que *"toda persona tiene el privilegio de rehusar revelar cualquier materia que tienda a incriminarle, a menos que la persona haya obtenido inmunidad a ser castigada por el delito en relación al cual podría incriminarse."*

Este privilegio puede invocarse en cualquier tipo de procedimiento: judicial, administrativo, legislativo, civil o penal. Sin embargo, no puede ser invocado con un planteamiento de peligro abstracto, pues para que tenga éxito, la persona debe estar en peligro real de convicción. El alcance de la protección se extiende sólo a situaciones que conlleven responsabilidad criminal; el daño civil no es suficiente. Ernesto L. Chiesa, *Práctica Procesal Puertorriqueña – Evidencia,* Cap. V, San Juan, **Publicaciones J.T.S.**, 1984, página 113.

El privilegio a la no autoincriminación protege a toda persona del peligro de responsabilidad criminal al contestar una pregunta, mas no tiene el alcance de permitir que la persona no se siente a declarar en lo absoluto. Como procede la invocación del derecho a no incriminarse, es que estando la persona sentada en la silla testifical y habiendo sido cuestionada mediante alguna pregunta sobre un asunto que considere que de ser contestado lo expondría al peligro de ser hallado responsable de la comisión de algún delito, puede invocar en ese momento el privilegio a la no autoincriminación. El privilegio puede levantarse solamente contra la prestación o extracción compulsoria de testimonio. Ernesto L. Chiesa, *supra*, a las páginas 111-119.

En el caso de marras, Pinto compareció a la vista administrativa en su capacidad de miembro de WIN, por derecho propio, a pesar que fue apercibido de su derecho a asistencia de abogado, y de la transcripción surge que, voluntariamente, decidió declarar. No obstante, fue advertido y asesorado por el oficial examinador sobre las expresiones que podía hacer y la forma de contrainterrogar a los testigos.

La pretensión de no testificar en un juicio en el que se es parte, sólo le es reconocida por nuestro ordenamiento jurídico a un acusado en casos criminales.

En conclusión, el error señalado no se cometió.

Respecto al séptimo señalamiento de error, en cuanto a que la orden del Comisionado imponiéndole satisfacer solidariamente el pago de una multa adicional equivalente al monto total del precio pagado por los valores vendidos, adolece de ambigüedad.

El error fue cometido.

Cuando se le otorga a una agencia administrativa el poder de adjudicar controversias, como regla general también se le concede el poder de emitir sanciones. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R.,* 144 D.P.R. 425, 438 (1997). La sección 3.21 de la L.P.A.U., 3 L.P.R.A. §2170(a), le concede a las agencias administrativas el poder de imponer sanciones cuando alguna parte deja de cumplir con sus reglas, reglamentos y órdenes. La agencia tiene gran discreción para seleccionar las sanciones que le ayuden a cumplir sus objetivos, siempre que obre dentro del marco de su conocimiento especializado. La sanción no debe exceder lo permitido por ley, ni constituir un abuso de discreción. *Assoc. Ins. Agencies, Inc. v. Com. Seg. P.R., supra*, a la página 438.

El artículo 409 de la Ley Uniforme de Valores, 10 L.P.R.A. 889(d), faculta al Comisionado para imponer una multa adicional equivalente al monto total del precio pagado por cualesquiera valores ofrecidos o vendidos

en contravención de las disposiciones de ley y a ordenar la devolución de tal precio a los compradores. Por tanto, la actuación del Comisionado al multar a los recurrentes cae dentro de los poderes conferidos.

Sin embargo, ni del informe del oficial examinador, ni de la resolución recurrida, surgen hechos específicos sobre el *"monto total del precio pagado por cualesquiera valores ofrecidos o vendidos en violación a la ley."* Como consecuencia de ello, resulta imposible determinar, para cumplir con el pago, y/o para ejecutar la misma, la cuantía de la multa impuesta. Además, ello no permite a los recurrentes impugnar la penalidad por no conocer la base sobre la cual fue computada.

Las determinaciones de hechos en las cuales se fundamentó el Comisionado, deben ser lo suficientemente definidas para ponernos en posición de revisar inteligentemente su decisión.

Como bien señala el Comisionado en su escrito de oposición al recurso presentado, en el récord existe base para determinar el total pagado por los valores ofrecidos o vendidos por **cada uno** de los recurrentes. Por esa razón, este es un asunto apropiado para ser devuelto al Comisionado para que formule las determinaciones de hechos en las que basó su dictamen. De esa forma, tendrá la oportunidad de señalar específicamente la cuantía de la multa impuesta a cada uno de los recurrentes como penalidad adicional equivalente al monto total del precio pagado por los valores ofrecidos o vendidos en contravención de las disposiciones de ley. *Misión Ind. P. R. v. J.P.,* 146 D.P.R. 64, 152-153 (1998).

Lo anterior no impide que los recurrentes comparezcan nuevamente ante este Tribunal a revisar la multa impuesta, una vez sean notificados de cualquier resolución emitida a esos efectos.

## V

Por los fundamentos anteriormente expuestos y de conformidad al derecho citado, expedimos el auto solicitado. Revocamos la sanción de trescientos dólares ($300.00) impuesta a Israel Méndez. Confirmamos las demás multas impuestas, excepto que se devuelve el caso a la Oficina del Comisionado de Instituciones Financieras para la continuación de los procedimientos en forma consistente con lo aquí resuelto, en lo referente a la multa adicional equivalente al monto total del precio pagado por los valores vendidos.

Lo acordó el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIOS 2003 DTA 121

**1.** Valor – Significará cualquier pagaré, acción, acciones en cartera, bono, vale, comprobante de deuda, certificado de interés o participación en algún convenio de distribución de beneficios o sociedad, certificado de valores fiduciarios en garantía, certificado de preorganización o subscripción, acción transferible, contrato de inversión, certificado de fideicomiso con derecho a voto, certificado de depósito en garantía, cuota de interés indiviso en petróleo, gas u otros derechos sobre minerales, o, en general, cualquier interés o instrumento conocido comúnmente como *"valor"*, o cualquier certificado de interés o participación en cualquiera de los precedentes valores, certificado temporero o provisional o recibo por los mismos, garantía de dichos valores o instrumentos de autorización u opción o derecho para subscribirlos. *"Valor"* no incluirá ninguna póliza de seguro, o de seguro dotal, ni contrato de anualidades mediante la cual una compañía de seguro se compromete a pagar una suma determinada de dinero, sea ésta pagadera en suma englobada o periódicamente, durante la vida de la persona o en cualquier otro período especificado.

**2.** Las secs. 1 *et seq.* de este título se denominarán como *"Ley de Bancos"*, y serán aplicables a todas las corporaciones organizadas o que en el futuro se organicen para dedicarse a negocios bancarios en Puerto Rico; Disponiéndose, que el término *"banco"* en la definición de un negocio, sólo lo podrán usar las corporaciones que hicieren negocios bancarios.